# MULBERRY HILLS DEVELOPMENT CORPORATION, Plaintiff,

v.

## UNITED STATES of America, et al., Defendants.

### Civ. A. No. HAR–89–2639.

United States District Court, D. Maryland.

Aug. 14, 1991.

Warren K. Rich, Graham & James, Washington, D.C., for plaintiff.

Richard B. Stewart, Asst. U.S. Atty. Gen., Land and Natural Resources Div., Scott A. Schachter, Kimberlea Rea Cowley, U.S. Dept. of Justice, Land and Natural Resources Div., Environmental Defense Section, Washington, D.C., Richard D. Bennett, U.S. Atty., Jane F. Barrett, Asst. U.S. Atty., Baltimore, Md., for defendants.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Presently pending before this Court is Defendants' Motion to Dismiss. Also pending are cross motions for partial summary judgment. A hearing was held on Defendants' Motion to Dismiss by Judge Paul Niemeyer, formerly of this Court. The issues have been fully briefed. No additional hearing is deemed necessary. Local Rule 105.6 (D.Md.).

### I.

Mulberry Hills is the owner and developer of a 62–acre tract of land located in the Town of Easton, Talbot County, Maryland, known as Mulberry Mews Subdivision ("Subdivision"). Plaintiff purchased the property for development purposes on July 6, 1988, for $600,000.00. In connection with the development of the site, which was originally planned to contain 161 single family homes, Mulberry Hills engaged John R. Plummer and Associates, Inc., to survey the land and perform site engineering. On February 16, 1989, the Subdivision plan for the 62 acres was approved by the Town of Easton. The plan was recorded in the county land records on May 30, 1989. Plaintiff also received approvals from the Maryland State Highway Administration to construct an entrance to the Subdivision onto U.S. Route 50 and from Talbot County for a soil erosion and sediment control plan. The Maryland Department of Environment sanctioned the sanitary, sewer and water systems planned for the Subdivision. Mulberry Hills did not, however, file an application with the United States Corps of Engineers ("Corp") for a permit to fill or grade wetlands as is required under 33 U.S.C. § 1344.

On May 25, 1989, Plaintiff entered into a contract for site grading, roadway construction and utility construction. Construction began on the tract in June, 1989. In the course of this work, wetlands were filled and graded.

In July, 1989, Alexander Dolgos ("Dolgos"), an employee of the Corp working out of the Baltimore District, performed a field review of the Subdivision. Dolgos evaluated the three parameters of soil conditions, hydrology, and types of vegetation (known as the "three parameter approach"). He observed sweetgum, red maple, blackgum, and willow oak on the site. These are classified as "facultative" wetland species. He also found cattails, which are classified as "obligate" wetland species. He further observed standing water and saturated soil conditions throughout the site and has a United States Department of Agriculture scientist perform a soil test which revealed hydric soils which were identified as "Pocomoke and Fallsington Series."

From this and other evaluations, Dolgos determined that a portion of Mulberry Mews adjacent to the headwaters of the Tanyard Branch, a tidal tributary of the Tred Avon River constituted wetlands. The Tred Avon River flows into the Choptank River which in turns empties into the Chesapeake Bay. Dolgos also observed that fill had been placed on a portion of these wetlands and that some had already been graded.

Dolgos notified Plaintiff of his findings and arranged with John H. Plummer ("Plummer"), the president of Mulberry Hills. On July 20, 1989, Dolgos and Plummer walked the site and Dolgos pointed out the wetlands. Plummer was informed that he would have to make an application for a wetlands permit under 33 U.S.C. § 1344, which would first require him to delineate the wetlands on the site. Finally, Dolgos handed Plummer a cease and desist letter dated July 19, 1989, which provided in pertinent part that:

> A recent field investigation disclosed that fill material has been placed on wooded nontidal wetlands....
>
> Records in this office indicate that neither a Department of the Army permit nor a letter of permission authorizing this work was issued by this office. The placement of fill material in Waters of the United States of an adjacent wetlands without prior approval of plans by the Department constitutes a violation of Section 404 of the Clean Water Act.

No further work is to be performed at this or any other location in a waterway or on wetlands without compliance with the laws. . . .

Plummer then retained an environmental consultant, Rod Schwarm ("Schwarm"). Dolgos and Schwarm walked the Subdivision site on July 25. It was then agreed that Schwarm would delineate the boundaries of the wetlands and depict them on a plan for verification by the Corp.

Dolgos apparently instructed Schwarm at their meeting that this delineation must follow the standards set forth in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands published in 1989 (the "1989 Manual"). Dolgos reportedly told Schwarm that the 1989 Manual generally followed the 58–foot contour on the topographic map. When the wetlands located in the Subdivision are delineated in this fashion, approximately 21 acres of the 62–acre tract constitutes wetlands. Seven of these 21 acres were fields that up to approximately a year earlier had been farmed with soy beans, wheat, and corn. These acres had been previously farmed for at least the past 30 years. Still, the seven acres of farmland presented positive readings on at least two of the three parameters for defining wetlands, i.e. hydrology and soil type. It is disputed whether the third parameter, hydrophytic vegetation is present. The government contends that hydrophytic plants are emerging since farming ceased and that if left to its natural state, hydrophytic vegetation would flourish on the previously farmed acreage.

Other than the informal discussions between Plummer, Schwarm and Dolgos, no delineation has been made by either party of those portions of the Subdivision which constitute wetlands. Likewise no application for a permit to fill or grade wetlands has been filed.

## II.

On October 5, 1989, Plaintiff Mulberry Hills Development Corporation ("Mulberry Hills") filed a Motion for Preliminary Injunction to prevent various agencies of the United States, particularly the Corp, from enforcing § 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344, by means of 1989 Manual. Mulberry Hills also sought to enjoin the enforcement of a cease and desist order issued by the Corp on July 19, 1989.

The core of Mulberry Hills' claims center around the 1989 Manual adopted by four federal agencies to guide its employees as to the delineation of wetlands. Plaintiff contends that the 1989 Manual is not simply an interpretative tool, as the government maintains, but that it substantially changed the rules for defining wetlands without notice and other procedures required for rulemaking by the Administrative Procedures Act ("APA"), 5 U.S.C. § 551, *et seq.*

In particular, Plaintiff argues that the 1989 Manual relaxed the definition of wetlands so that only two of the three parameters established by the regulation are necessary to characterize lands as wetlands if the property has been disturbed by human agency. Mulberry Hills argues that under the definition found in the 1989 Manual, perhaps 50 percent of the Eastern Shore of Maryland, including farmlands, could be defined as wetlands. Plaintiff contends that if the 1987 Manual, which preceded the 1989 Manual, were applied, the delineation would be different, and the wetlands area on its property would be more approximately 14 acres, instead of the 21 acres estimated by the government.

Mulberry Hills is willing to stop work on the 14 acres, but wishes to continue development on the seven acres that it contends was added as wetlands by virtue of the 1989 Manual, which Plaintiff contends was illegally adopted. Mulberry Hills further maintains that as to the seven acres in dispute, the only issue is whether the 1989 Manual is a properly adopted rule under 5 U.S.C. § 553.

In response to the Motion for Preliminary Injunction, the government argued that the issues raised by Mulberry Hills were not ripe for ruling and that this Court would violate the agency's primary jurisdiction by ruling upon wetlands. The government notes regardless of the standard, it

has jurisdiction over wetlands on this tract. It has observed fill and grading on wetlands in violation of the CWA. The government contends that once jurisdiction is so established, the wetlands must be delineated from uplands, which is an agency process that has not yet taken place. In the process of delineation, the parties can argue as to the proper method of defining wetlands and the legality of the 1989 Manual. If need be, Plaintiff can appeal the agency determination, including the legality of the Manual, after the administrative action has been completed. Furthermore, the government maintains that even if this Court were to rule upon the legality of the 1989 Manual, that the booklet falls within the exception of rulemaking procedures set forth in 5 U.S.C. § 553(b)(3)(A), which provides that the procedures do not apply to "interpretive rules, general statements of policy, or rules of agency organization, or procedure, or practice...." Following oral arguments held on November 7, 1989, and after reviewing supplemental materials supplied by both sides, Judge Niemeyer issued a comprehensive opinion on November 14, 1989, in which he denied the Motion for a Preliminary Injunction, finding that Plaintiff had not met its burden for injunctive relief established by the Fourth Circuit in *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977). Mulberry Hills has moved for reconsideration of this decision.

The government filed a motion to dismiss, asserting that there can be no pre-enforcement judicial review under the CWA, that Plaintiff's claims are not ripe for adjudication, and that the doctrines of primary jurisdiction and exhaustion of administrative remedies deprive this Court of subject matter jurisdiction in this case. In response, Mulberry Hills asserts that the 1989 Manual is subject to judicial review. It urges this Court to consider whether the Manual is subject to the APA and is reviewable under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. A hearing on the Motion to Dismiss was held by Judge Niemeyer.

The parties were allowed to conduct discovery on this case in connection to the Motion to Dismiss and submit supplemental memorandum of authority following hearing on the motion. The parties have since filed cross-motions for partial summary judgment.

Mulberry requested in its memorandum of law in support of a preliminary injunction "that the [1989] Manual and the cease and desist order issued to the Plaintiff under the Manual be enjoined and set aside." Plaintiff's Memorandum of Law at 5. This Court is thus presented with two issues for determination; whether allegations regarding the cease and desist letter can be heard in the Court at this time, and whether challenges to the 1989 Manual were properly brought in this Court.

### III.

The cease and desist letter was issued on July 19, 1989. The government argues that no final agency action has been taken with respect to the cease and desist latter, an administrative order. The Corps has not instituted a proceeding to enforce the order. Consequently, the government maintains, it is not judicially reviewable.

As this Court previously noted in its Memorandum of November 14, 1989, the CWA does not provide for pre-enforcement review. The Corps has not attempted to enforce the cease and desist letter, and in fact has not sought any sort of enforcement. This Court has jurisdiction only from a final agency action. *See Southern Pines Associates v. United States*, 912 F.2d 713 (4th Cir.1990); *Hoffman Group, Inc. v. Environmental Protection Agency*, 902 F.2d 567 (7th Cir.1990); *City of Baton Rouge v. United States Environmental Protection Agency*, 620 F.2d 478 (5th Cir. 1980); *McGown v. United States*, 747 F.Supp. 539 (E.D.Mo.1990); *Fiscella & Fiscella v. United States*, 717 F.Supp. 1143 (E.D.Va.1989). *Southern Pines* involved a challenge to an Environmental Protection Agency ("EPA") cease and desist order made under the CWA. The Fourth Circuit after comparing the CWA to the Clean Air Act ("CAA") and the Comprehensive Environmental Response, Compensation, and Li-

ability Act ("CERCLA") in purpose and enforcement mechanisms, the Fourth Circuit concluded that "Congress meant to preclude judicial review of compliance orders under the CWA, just as it meant to preclude pre-enforcement review under the CAA and CERCLA." 912 F.2d at 716. Likewise in *Fiscella,* the plaintiff presented similar challenges to a cease and desist order. The court held that "pre-enforcement review is inconsistent with the enforcement scheme of the CWA." 717 F.Supp. at 1147.

Because the Act does not provide for pre-enforcement review, Mulberry Hills may not proceed at this time with its claim to enjoin and set aside the cease and desist order as the Corps has not attempted to enforce the order. All claims relating to the cease and desist order are dismissed.

### IV.

■ Defendants contend that Mulberry Hills' challenge to the legality of the 1989 Manual is not ripe for judicial review at this time. An inquiry into ripeness properly begins with the two-part test enunciated in *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). In *Abbott Laboratories,* the Supreme Court held that in determining whether a case is ripe, a court must test "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.,* 387 U.S. at 149, 87 S.Ct. at 1515. The court is in essence required "to balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review." *Webb v. Department of Health & Human Services,* 696 F.2d 101 (D.C.Cir.1982).

In applying this two part test, it must first be determined whether the issues are fit for judicial determination. "[T]his is primarily an inquiry into whether the factual setting of the case is sufficiently clear to be susceptible to adjudication." *Andrade v. Lauer,* 729 F.2d 1475, 1481 (D.C.Cir. 1984).

In the case at bar, Mulberry Hills attacks the application of the 1989 Manual to the determination of possible wetlands on its property. The central factual issue is whether the 1989 Manual would impose new definitions of "wetlands" upon the plaintiff. Even though Plaintiff's land concededly contains some areas subject to the Corps' jurisdiction, no delineation has been conducted by either Mulberry or the Corps. In fact, for a time Mulberry refused access to its land to the Corps for making a delineation while at the same time refusing to conduct its own wetlands delineation, as the Corps requested, under either the 1989 Manual or pre-existing regulations. In order to reach the legal issues in Plaintiff's complaint, the factual issues embodied in the complaint must be resolved. As they have not been to this point, they do not present purely legal questions and are thus not fit for judicial resolution. *See Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. *See also Merlino v. United States,* No. C90–1515WD, slip op. at 4–5, 1991 WL 152378 (W.D.Wash. May 24, 1991); *Municipality of Anchorage v. United States,* 32 Env't Rep.Cas. (BNA) 1199, 1990 WL 260246 (D.Alaska 1990).

In addition to there being more than a purely legal question still present in this case, Mulberry Hills' claims are also not ripe for resolution as there has not been final agency action. In determining whether the agency's actions are final, it must be determined which "actions" are being reviewed. A promulgated regulation was found may constitute a "final" action. *Abbott Laboratories,* 387 U.S. at 149, 87 S.Ct. at 1515. Here, however, there is no "regulation" that has been promulgated pursuant to the APA, which, of course, is precisely the basis for Mulberry Hills' challenge. In response, the Corps has denied that the 1989 Manual would be used in delineating Plaintiff's property. This is all a matter of conjecture until such delineation actually takes place. Indeed, until such a delineation takes place using the 1989 Manual, it could be argued that review of the legality of the Manual by this Court would constitute an improper advisory opinion.

The government argues that the appropriate channel for challenging application of the 1989 Manual or any alleged changes that would be caused to the definition of "wetlands" should be accomplished through an administrative hearing and permit application. These avenues remain open to Mulberry Hills, although it has chosen not to avail itself of them. This Court agrees with the government's argument. Until the use of the 1989 Manual is challenged on the administrative level, there can be no final agency action in this case.

Plaintiffs also fail to meet the second prong of the *Abbott Laboratories* test. That prong inquires into the hardship that a plaintiff would suffer if judicial relief is withheld. The only hardship advanced by Mulberry Hills is financial loss caused by delay. It should be noted that Mulberry Hills have not attempted to mitigate this potential loss through obtaining a delineation and submitting itself to the permit application process and agency review. Mulberry Hills has not pursued this process. Accordingly, this Court finds that Plaintiff has not demonstrated the compelling hardship that it will suffer as a result of judicial review being withheld at this time.

Neither prong of the *Abbott Laboratories* test has been met in this case. Accordingly, the issue of whether the 1989 Manual has been unconstitutionally promulgated, and whether it should be enjoined and set aside is not ripe for adjudication at this time.

### V.

■ As additional grounds for dismissal, the government alleges that Mulberry Hills has failed to exhaust its administrative remedies. In *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938), the Supreme Court stated the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." 303 U.S. at 50–51, 58 S.Ct. at 463–464. *See also Thet-*

*ford Properties IV Ltd. Partnership v. United States Department of Housing & Urban Development*, 907 F.2d 445, 448 (4th Cir.1990).

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), the Supreme Court held that there is no implied right of action under the CWA. Rather, only those remedies expressly set forth in the CWA are available to private parties. In 33 U.S.C. § 1365, the CWA provided causes of action in limited circumstances for private plaintiffs. Mulberry Hills does not claim to fall within any of the specified categories of allowable suits. Accordingly, this Court does not have original jurisdiction over the regulations and acts of the agency pursuant to the CWA.

■ Where administrative procedures are in place to review a plaintiff's grievance, the plaintiff must first proceed to the agency for an administrative determination of the issues. *See United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 63, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) ("judicial interference should be withheld until administrative process has run its course."). *See also, Swanson v. United States*, 600 F.Supp. 802 (D.Idaho 1985), *aff'd* 789 F.2d 1368 (9th Cir.1986). There are four purposes behind the requirement of exhaustion of administrative remedies:

First, it carries out the congressional purpose in granting authority to the agency by discouraging the 'frequent and deliberate flouting of administrative processes [that] could ... encourag[e] people to ignore its procedures....' Second, it protects agency autonomy by allowing the agency the opportunity in the first instance to apply its expertise, exercise whatever discretion it may have been granted, and correct its own errors. Third, it aids judicial review by allowing the parties and the agency to develop the facts of the case in the administrative proceeding. Fourth, it promoted judicial economy by avoiding needless repetition of administrative and judicial factfinding, and by perhaps avoiding the necessity of

any judicial involvement at all if the parties successfully vindicate their claims before the agency.

*Andrade*, 729 F.2d at 1484 (citation and footnote omitted).

The Fourth Circuit has adhered to these principles: "We find these prudential considerations no less weighty when an administrative litigant raises a constitutional challenge to a statute which an agency is charged with enforcing." *Thetford Properties*, 907 F.2d at 448. The *Thetford Properties* court noted that exhaustion is "particularly appropriate" where the administrative remedy may resolve the dispute without deciding the constitutional issues. *Id., quoting American Federation of Government Employees v. Nimmo*, 711 F.2d 28, 31 (4th Cir.1983).

Cases involving failure to exhaust administrative remedies have been decided according to the circumstances in each case, with differing results. Still, some consistent principles have emerged. In *W.E.B. DuBois Clubs v. Clark*, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967), appellants challenged the constitutionality of a statute. The Supreme Court ruled that the appellants must proceed with administrative remedies before bringing a complaint to district court, finding that "Congress has provided a way for appellants to raise their constitutional claims" through the administrative process. *Id.* 389 U.S. at 311, 88 S.Ct. at 452. Thus, a bare challenge to the constitutionality of a statute or rule without full development of facts and administrative exhaustion, is not appropriate for judicial determination where administrative procedures are in place that may resolve both the factual and legal disputes. *Cf. Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) (constitutional question could be decided when presented in factual context). As has been previously noted, Mulberry Hills brings this suit without full factual development and administrative exhaustion where such procedures are in place. As such, it is not proper for determination at this time.

It would be premature for this Court to consider the issues presented prior to an administrative proceeding determining the factual underpinnings of this case, including whether a delineation has been performed, whether the 1989 Manual was used, whether the delineation would differ from a survey taken using pre-existing regulations, and whether Mulberry Hills has suffered any injury from use of the 1989 Manual. It might evolve that the parties reach a fair conclusion of this litigation at the administrative level once these factual issues are properly before the parties and the agency.

This Court notes that in some circumstances, other jurisdictions have found that a plaintiff need not exhaust all administrative remedies. To that end, the Supreme Court in *Leedom v. Kyne*, 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958), stated that "[t]his Court cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." 358 U.S. at 190, 79 S.Ct. at 185. However, such overreaching is not found in the situation presented to this Court. The Corps and the EPA are uniquely delegated the authority to promulgate regulation, and to provide guidelines and information to assist in enforcing the CWA. The 1989 Manual, which the government contends is a guideline or a statement of policy, is within that broad delegation of authority, regardless of whether it was improperly promulgated. The Corps does not appear to have exceeded its authority to such an extent as to justify advancing immediate judicial protection to Mulberry Hills. Mulberry Hills must proceed through the administrative process.

The factual development and administrative exhaustion on the agency level are necessary precursors to determining the constitutionality of the manual and the issues presented in this suit, and because wetland delineation is within the special expertise of the agencies involved. Until the agency reaches a final determination, including a delineation, this Court will defer to the agency's internal procedures. Accordingly, this Court holds that these issues are not now ripe for adjudication.

Defendants' Motion for Summary Judgment on these issues is granted.

## VI.

■ Even if this Court has concurrent jurisdiction with the agency over Mulberry Hills' complaint, the doctrine of primary jurisdiction would require deferral to the agency.

■ The doctrine of primary jurisdiction directs a court, where both an agency and a court have jurisdiction over a matter, to refrain from exercising its judicial power so that an agency particularly equipped to address issues and charged with regulatory duties within its expertise may perform its functions. *See Nader v. Allegheny Airlines, Inc.,* 426 U.S. 290, 303, 96 S.Ct. 1978, 1986, 48 L.Ed.2d 643 (1976); *Western Pacific Railroad,* 352 U.S. at 63, 77 S.Ct. at 164.

The purpose of the doctrine of primary jurisdiction, and the reasons for invoking the doctrine, include the need to promote uniformity and consistency in the regulation of business entrusted to an administrative agency, and the recognition that agencies are often better equipped than courts to resolve certain issues because of specialization and insight gained through experience. The doctrine is particularly appropriate where a technical question of fact is presented which is uniquely within the jurisdiction and expertise of the delegated agency. *See Far East Conference v. United States,* 342 U.S. 570, 574–75, 72 S.Ct. 492, 494–95, 96 L.Ed. 576 (1952); *Nader,* 426 U.S. at 304, 96 S.Ct. at 1987.

Deferral to the agency on the issues raised in this case, on the basis of primary jurisdiction, is appropriate. The factual issues are present which are particularly within the expertise of the Corps and the EPA. Determination of whether an area constitutes a wetland within the meaning of § 404 of the CWA requires agency expertise. *See Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 919–20 (5th Cir.1983); *Golden Gate Audubon Society v. United States Army Corps of Engineers,* 717 F.Supp. 1417, 1420 n. 3 (N.D.Cal.1988).

Accordingly, even if this Court were to find that this complaint was ripe for determination, the Court would defer to the agency for further findings under the doctrine of primary jurisdiction.

## VII.

■ Mulberry Hills, in Counts III through V of the amended complaint, seeks declaratory judgment by the Court on alternative challenges to the agency's jurisdiction on equal protection and due process grounds and on the grounds that the cease and desist letter constitutes an unconstitutional taking without just compensation.

Specifically, in Count III, Mulberry Hills argues that, if the "Court shall find that Plaintiff's real property does factually fall within one of the definitions of 'Waters of the United States' as contained in the Regulations as implements by the standards in the [1989] Manual," then the Court should declare that the Subdivision property does not have a sufficient "nexus" with interstate commerce to come within the jurisdiction of the defendants. Consequently, the defendants should be enjoined from exercising jurisdiction over the property. Count IV, stated in the alternative to Counts I, II, and III, requests that this Court enter declaratory judgment enjoining the Defendants from exercising jurisdiction as their attempt to do so is in violation of Mulberry Hill's rights of equal protection and due process. This claim is based upon a factual contention that the Corps did not exercise jurisdiction or require permit for a "nearly adjacent subdivision similarly situated." Count V charges that the Corps' cease and desist order constitutes a regulatory taking without just compensation, and requests a declaratory judgment to that effect.

The government's motion to dismiss Counts III, IV, and V will be granted. These Counts challenge the jurisdictional power of the Corps to enforce regulations an procedures under § 404 of the CWA. The parties have conceded at oral argument on the motion for preliminary injunction that some part of the 62 acres consti-

tute wetlands regardless of the definition employed. The administration of the CWA is delegated by Congress to the EPA except as otherwise provided. 33 U.S.C. § 1251(d). Section 404 delegates the responsibility for issuing and denying permit applications for the discharge of dredged or fill material into the waters of the United States to the Secretary of the Army, action through the Chief of Engineers. 33 U.S.C. § 1344. The parties do not contest that Defendants are authorized to exercise jurisdiction over areas containing wetlands, and as part of that authority, to issue cease and desist orders. *See* 33 C.F.R. § 326.-3(c)(1). Defendants have followed the procedures identified in the regulations.

Additionally, Mulberry Hills may not proceed in this Court instead of through the agency merely because a violation of a constitutionally protected right has been alleged. *Thetford Properties,* 907 F.2d at 448. Where a plaintiff has failed to exhaust its administrative remedies, and where resolution at the agency level could dispose of the dispute, requiring exhaustion of remedies is "particularly appropriate." *American Federation of Government Employees,* 711 F.2d at 31. "Courts should not decide constitutional issues unnecessarily." *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985). To resolve these issues prior to administrative exhaustion would violate this cardinal rule.

This Court finds that Mulberry Hill's claims are capable of resolution through the administrative process. Accordingly, Mulberry Hills' claims in Counts III, IV, and V are dismissed. Plaintiffs' Motion for Reconsideration and Motion for Partial Summary Judgment are denied.