In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3290

Dennis R. Bay,

Plaintiff-Appellant,

v.

Cassens Transport Company,

Defendant-Appellee.


Appeal from the United States District Court
for the Southern District of Illinois, East St. Louis Division.
No. 98-433-WDS--William D. Stiehl, Judge.


Argued February 14, 2000--Decided May 11, 2000


Before Bauer, Flaum, and Evans, Circuit Judges.

Flaum, Circuit Judge. Plaintiff-appellant Dennis R. Bay appeals the district court's decision granting summary judgment to Cassens Transport Company ("Cassens") on Bay's employment discrimination claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. sec. 12101 et seq., and the Missouri Human Rights Act ("MHRA"), Mo. Rev. Stat. sec. 213.010 et seq. Bay alleges that the district court erred in concluding that he was required to exhaust his administrative remedies before pursuing judicial relief. For the reasons stated below, we affirm the decision of the district court.

I.  Facts

Cassens is engaged in the business of transporting new vehicles from assembly plants to automobile dealerships in the United States and Canada. Dennis R. Bay was first employed by Cassens as a long-haul truck driver in June 1987.

On May 21, 1997, Bay experienced chest pains and dizziness while driving and sought treatment at Franklin County Hospital in Benton, Illinois. While at the hospital Bay underwent initial testing, but he was released on the condition that he seek further medical consultation. On May 23, 1997, Bay again experienced chest pains. Bay was then admitted to Missouri Baptist Medical

Center where he was diagnosed with profound sinus bradycardia with near syncope (loss of consciousness) and near fainting. Bay underwent surgery to implant a pacemaker to correct this problem on May 27, 1997, and remained on a medical leave of absence from work.

At the end of June 1997, Cassens instructed Bay to report to Healthline, an organization with which Cassens has an ongoing relationship to perform Department of Transportation ("DOT") physicals, for a return-to-work DOT recertification examination. When Bay informed Healthline of the medical condition that resulted in his leave, Healthline told him that it would have to review his medical records before determining his physical qualifications to return to work. After a review of these records, Dr. Cheryl L. Patterson, a physician at Healthline, informed Cassens that she believed Bay was permanently disqualified from driving under DOT safety regulations.

Bay disputed Healthline's disqualification determination and, pursuant to the collective bargaining agreement between Cassens and Bay's union, Bay was sent to an impartial physician to resolve the dispute. After examining Bay, Dr. Gerald A. Wolff, a cardiologist, stated that Bay appeared to fall into a category of pacemaker recipients who could return to commercial driving. However, Dr. Wolff would not state definitively that Bay was qualified to drive under DOT regulations, and he suggested that Bay seek a waiver from DOT. The regulations do not provide for waivers for cardiac conditions.

On October 22, 1997, Bay's union filed a grievance on Bay's behalf requesting that he be reinstated based on the union's belief that Dr. Wolff had found Bay DOT-qualified. Cassens denied Bay's grievance, and the union pursued the collectively-bargained grievance procedure. Ultimately, an arbitration panel ruled that Dr. Wolff had not provided a definite determination of Bay's qualifications to return to work. The panel then ordered the parties to select another doctor to perform a DOT examination.

The parties selected Dr. Stephen Pieper to perform the DOT examination, and Dr. Pieper found Bay qualified under applicable DOT regulations. The arbitration panel then ordered Cassens to reinstate Bay, but found that Cassens had been under no obligation to return Bay to work until a third-party doctor definitively found Bay qualified to resume driving. Consequently, the Board only awarded back pay for the company's three-day delay in reinstating Bay after Dr. Pieper's certification. Bay was returned to work on March 9, 1998.

On January 6, 1998, Bay filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Missouri Human Rights Commission ("MHRC"), alleging that Cassens violated the ADA and the MHRA when it refused to allow him to return to work. The EEOC issued a dismissal and notice of right to sue letter on March 27, 1998, and the MHRC issued a right to sue letter on June 8, 1998.

Bay then filed suit in the United States District Court for the Southern District of Illinois, alleging that Cassens had violated his rights under the ADA and the MHRA. Cassens moved for summary judgment, and the district court granted that motion on the ground that Bay had failed to exhaust his administrative remedies. Bay now appeals this grant of summary judgment, arguing that neither the ADA nor the MHRA require a plaintiff to exhaust administrative remedies before filing suit.

## II. Analysis

We review the district court's grant of summary judgment de novo. See Johnson v. Zema Sys. Corp., 170 F.3d 734, 742 (7th Cir. 1999). In order to overcome summary judgment, Bay must show specific facts sufficient to raise a genuine issue for trial. Fed. R. Civ. P. 56(c); see Shermer v. Illinois Dep't of Transp., 171 F.3d 475, 477 (7th Cir. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). In determining whether a genuine issue of material fact exists, we construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. See Senner v. Northcentral Technical C., 113 F.3d 750, 754 (7th Cir. 1997). "A genuine issue for trial exists only when a reasonable jury could find for the party opposing the motion based on the record as a whole." Roger v. Yellow Freight Sys., Inc., 21 F.3d 146, 149 (7th Cir. 1994). In considering the district court's decision on appeal, we may affirm on a ground other than that relied on by the district court so long as it is adequately supported in the record and the law. See Divane v. Krull Electric Co., Inc., 200 F.3d 1020, 1026 (7th Cir. 1999).

The ADA provides that "no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. sec. 12112(a). A "qualified individual with a

disability" is defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. sec. 12111(8). A disability is then defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. sec. 12102(2).

In attempting to establish that Cassens violated the ADA through its refusal to allow him to return to work as a commercial truck driver, Bay relies on the "regarded as" prong of the ADA's disability definition. 42 U.S.C. sec. 12102(2)(C). Bay can demonstrate that he falls within the "regarded as" definition of a disability by showing that: "(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities." Sutton v. United Air Lines, Inc., 119 S.Ct. 2139, 2149-50 (1999). In this case, Bay contends that his rights under the ADA were violated when Cassens refused to allow him to return to work because it mistakenly believed the profound sinus bradycardia with near syncope and near fainting he suffered before implantation of the pacemaker substantially limited him in the major life activity of working (in this case, driving a truck).

Although the district court granted Cassens summary judgment on Bay's ADA claim based on Bay's failure to exhaust his administrative remedies, we first consider the threshold question of whether Bay has raised a genuine issue of material fact as to all the elements of an ADA claim. In this regard, much of Cassens's response to Bay's ADA claim focuses on Bay's failure to pass a recertification examination prior to the physical conducted by Dr. Pieper on March 6, 1998. First, Cassens contends that because DOT certification is a legitimate requirement for Bay's job as a commercial truck driver, Bay was not an "otherwise qualified" individual within the meaning of the ADA until he was recertified. Second, Cassens contends that because Bay did not produce any evidence that it refused to reinstate him because it regarded him as disabled, but rather only demonstrated that Cassens relied on Bay's lack of certification in making its decision, Bay cannot demonstrate that Cassens regarded Bay as disabled. Under both of these theories, Cassens asserts that its reliance on DOT regulations requiring commercial truck

drivers to obtain certification precludes liability under the ADA as long as Cassens actually relied on those regulations in refusing to reinstate Bay.

It is well-established that a plaintiff has the burden of proving that he is "qualified" to perform the essential functions of the job he holds or seeks, with or without reasonable accommodation./1 See Best v. Shell Oil Co., 107 F.3d 544, 547-48 (7th Cir. 1997); Weiler v. Household Fin. Corp., 101 F.3d 519, 524 (7th Cir. 1996); DeLuca v. Winer Indus., Inc., 53 F.3d 793, 797 (7th Cir. 1995). Our inquiry into whether Bay was qualified to resume his duties as a commercial truck driver involves a two-step analysis. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 563 (7th Cir. 1996). We first consider whether "the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc." 29 C.F.R. app. sec. 1630.2(m). If the individual possesses the appropriate prerequisites for the position, we then consider "whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation." Id. Whether or not an individual meets the definition of a qualified individual with a disability is to be determined as of the time the employment decision was made. See Weiler, 101 F.3d at 524.

Cassens argues that Bay cannot sustain his burden to show he was qualified to return to work as a commercial truck driver because, at the time Bay sought reinstatement, he did not possess the DOT certification that was required in order for him to work in that position. Under the ADA, an employer can apply "qualification standards" that deny a job to an individual with a disability as long as those standards are "job-related and consistent with business necessity." 42 U.S.C. sec. 12113(a); 29 C.F.R. sec. 1630.15(b)(1). Moreover, an employer may have a defense to a charge of discrimination if an action is "required or necessitated by another Federal law or regulation." 29 C.F.R. sec. 1630.15(e). Under applicable DOT regulations, Cassens was not allowed to permit Bay to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, 49 C.F.R. sec. 391.11(a); 49 C.F.R. sec. 391.41(a), and nothing in the ADA purports to change that obligation, see Thoms v. ABF Freight Sys., Inc., 31 F.Supp.2d 1119, 1127 (E.D.Wis. 1998) ("The ADA does not override health and safety requirements established under other Federal laws.") (quoting EEOC Technical

Assistance Manual at IV-16). In light of these DOT standards, we agree that Bay's failure to obtain DOT certification is fatal to his ADA claim.

Bay argues that Dr. Patterson's refusal to state that he was physically qualified to drive, and his consequent inability to gain the necessary certification, does not indicate that he was not "otherwise qualified" to drive a commercial vehicle under the terms of the ADA. In essence, Bay contends that a company may not rely on the results of a recertification examination if that examination incorrectly applies the relevant DOT standards. However, under the circumstances presented in this case, we will not look behind Bay's initial inability to attain certification and second-guess the medical determination of Dr. Patterson. See Murphy v. UPS, 119 S.Ct. 2133, 2138 (1999) ("Had a physician examined petitioner and, in light of his medical history, declined to issue a temporary DOT certification, we would not second-guess that decision."); Campbell v. Federal Express Corp., 918 F.Supp. 912, 918 (D.Md. 1996) (stating that an employer is "entitled to rely on medical determinations made by its medical professionals"). At the point Dr. Patterson refused to recertify Bay, Cassens was not only entitled to rely on that judgment, but was legally required to refuse Bay's request to return to driving a commercial motor vehicle until he presented the proper certification. See Albertsons, Inc. v. Kirkingburg, 119 S.Ct. 2162, 2171 (1999) (stating that employers have an "unconditional obligation to follow the [DOT] regulation[s] and [a] consequent right to do so").

It was not until Dr. Pieper determined that Bay was qualified to drive pursuant to DOT standards that he was "otherwise qualified" under the ADA. See Prado v. Continental Air Trans. Co., 982 F.Supp. 1304, 1307 (N.D.Ill. 1997) (stating that "to become a 'qualified individual' under the ADA, . . . drivers must be DOT certified or be able to obtain DOT certification" by passing "the requisite physical examination"). Significantly, this is the point at which Cassens allowed Bay to resume driving. Whether a certification dispute is resolved through administrative procedures, or through a private collective bargaining process, it is only when a dispute is resolved in favor of the employee that an employer is obligated to return the employee to work. Until that point, Cassens was entitled to rely on Bay's failure to obtain certification in refusing to allow him to resume his employment as a commercial truck driver, and Cassens may assert Bay's lack of certification as a valid defense to Bay's ADA

claim./2 See 42 U.S.C. sec. 12113(a); 29 C.F.R. sec. 1630.15(e); Albertsons, 119 S.Ct. at 2171 & n.16.; Rice v. Genova Products, Inc., 978 F.Supp. 813, 822 (N.D.Ind. 1997) ("[I]t is well-established in the case law, the ADA itself, and the legislative history of the Act that reliance on a federal requirement or regulation constitutes a defense to an ADA claim . . . .").

Although we decline to look behind Bay's lack of certification on the facts presented here, we emphasize that this holding does not preclude courts from examining the medical basis for a certification decision in all circumstances. In cases where the doctor's disqualification decision is based on a condition not covered by DOT regulations, see, e.g., EEOC v. Texas Bus Lines, 923 F.Supp. 965 (S.D.Tex. 1996), or where the plaintiff's lack of certification is used as a pretext for discrimination, see Silk v. City of Chicago, 194 F.3d 788, 799 (7th Cir. 1999) (applying the McDonnell Douglas burden-shifting test to disparate treatment claims under the ADA), or if an employer is working in collusion with a medical professional to deny certification, a plaintiff's lack of certification may not be decisive./3 However, in this case there is no evidence that Cassens acted in any way to prevent Bay from being recertified or that Cassens acted in bad faith, nor is there any indication that Cassens's reliance on Dr. Patterson's medical determination was unreasonable./4 We therefore find that Bay was not "otherwise qualified" under the ADA because he lacked the necessary DOT certification. Because Bay failed to make out an element of his ADA claim, the district court's grant of summary judgment on Bay's employment discrimination claims was proper. See Weiler, 101 F.3d at 523. Accordingly, we need not address the other issues presented by this case, including the administrative exhaustion ground relied on by the district court./5


III.  Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

/1 Although the remainder of the opinion will analyze Bay's claim in the context of the ADA, the same framework applies to his MHRA claim as well. See Mole v. Buckhorn Rubber Products, Inc., 165 F.3d 1212, 1216 (8th Cir. 1999) (stating that in order to establish a claim under the MHRA, a plaintiff must demonstrate that he was "qualified to perform the essential functions of [the] job with or without reasonable accommodation").

/2 Bay argues that allowing Cassens to assert its reliance on Bay's lack of certification as a defense, without a showing that Bay did not actually meet DOT qualification standards, would permit a company to use its own doctor to shield itself from liability under the ADA. We disagree. First, as noted below, a company may not be able to escape liability in situations where a plaintiff can demonstrate that the company's reliance on its doctor's medical determination was unreasonable or in bad faith. Second, in cases where a company does act reasonably and in good faith, an employee can resort to administrative procedures for resolving medical disputes under 49 U.S.C. sec. 391.47 (providing for application to the Director of the Office of Motor Carrier Research Standards for the resolution of disputes). In other words, while an employee may not be able to subject an employer who acts reasonably and in good faith to liability under the ADA, that employee may still enforce his right to return to work under an alternative regulatory scheme.

/3 We do not intend this to be an exhaustive list of the situations in which a court might disregard an employer's reliance on a medical determination. This list is only to emphasize that our holding is limited to cases where an employer's reliance on the determination of a medical professional is reasonable and in good faith.

/4 Bay seems to contend that Cassens was not entitled to rely on the judgment of Dr. Patterson because she worked for Healthline, an organization with which Cassens had an ongoing relationship. Although we do not reject the idea that a court could second-guess a medical determination when a significant conflict of interest exists, this case does not rise to that level. A mere ongoing relationship between a company and a health organization does not demonstrate a conflict of interest, nor is there any evidence in the record that Dr. Patterson's evaluation was biased. Medical judgments are subjective and may vary from doctor to doctor, and a company is "entitled to rely on the determinations made by its medical professionals," Campbell, 918 F.Supp. at 918, as long as that reliance is reasonable and in good faith.

/5 Although we do not decide the applicability of administrative exhaustion to ADA cases like the instant one, we recognize that such a requirement might be appropriate. The DOT has set up a procedure for the resolution of disputes over medical determinations under 49 C.F.R. sec. 391.47, and that procedure provides a means by

which employees may challenge a certification
decision without resort to the courts. Where
these kinds of administrative procedures are
available, a plaintiff is generally required to
exhaust these avenues for relief. See Reiter v.
Cooper, 507 U.S. 258, 269 (1993).