# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4027

_____

Charles Harris,                                    *
                                                   *
            Appellant,                             *
                                                   *  Appeal from the United States
      v.                                           *  District Court for the
                                                   *  Eastern District of Arkansas.
P.A.M. Transport, Inc.;                            *
P.A.M. Transportation Services, Inc.,              *
                                                   *
            Appellees.                             *

_____

Submitted: August 5, 2003

Filed:  August 5, 2003

_____

Before WOLLMAN, MAGILL, and BEAM, Circuit Judges.

_____

BEAM, Circuit Judge.

     Charles Harris appeals from the dismissal of his claims under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (ADA), and Arkansas law.  We affirm.

## I. BACKGROUND

P.A.M. Transport, Inc. and P.A.M. Transportation Services, Inc. (collectively, "PAM") operate a contract and common motor carrier business and are licensed for interstate commerce by the United States Department of Transportation (DOT). PAM has a contract with Midwestern Transportation Center (MTC), a truck-driving school in St. Louis, Missouri, under which MTC trains prospective drivers for PAM. Drivers who successfully complete MTC's training program, obtain a commercial driver's license, and satisfy DOT medical standards receive conditional offers of employment from PAM in most instances.

Harris reported to MTC on April 30, 2001, and signed a Student Training Agreement.[1] During the course of his training, he received a medical examination by Dr. James Hussey, a physician retained by MTC to perform DOT physicals on prospective drivers. Dr. Hussey concluded that Harris satisfied DOT medical regulations and issued a medical examiner's certificate of physical qualification as required by 49 C.F.R. § 391.41(a). Dr. Hussey's office faxed a report of Harris's physical to PAM's medical review office on June 26, 2001. The report revealed that Harris was taking four prescription medications and had recently undergone a bilateral kidney transplant. PAM's medical review manager had concerns about these conditions, so she contacted Harris and requested additional medical records. Eventually, PAM obtained records from Harris's physicians at the University of

---

[1]The essential terms of the agreement required Harris to report to work for PAM upon completion of the MTC program; to pay a $2,500 penalty, in addition to the $4,800 cost of tuition, if he failed to report to PAM and become an official employee or if he quit before twelve months had expired; and to pay just the tuition cost if PAM chose to terminate his employment for any reason during the first twelve months. If he completed twelve months of employment with PAM, he would no longer have any obligation to repay the cost of the MTC tuition.

Tennessee Medical Group and forwarded the records for review by a physician retained directly by PAM, Dr. Craig Cooper.

Dr. Cooper reviewed Harris's records, including Dr. Hussey's report of the DOT physical, and concluded that Harris did not qualify for employment as a commercial driver under DOT regulations. PAM informed Harris that it would not hire him as a driver. When Harris subsequently began receiving bills for repayment of his tuition, he filed a complaint with the Equal Employment Opportunity Commission that was then converted into this federal lawsuit.

Harris alleges that PAM discriminated against him on the basis of a perceived disability in violation of the ADA, 42 U.S.C. § 12112(d). Specifically, he argues that PAM discriminated against him by requesting and reviewing his medical records after he had already passed his initial DOT physical and when all entering employees were not subjected to the same medical review. He also asserts a number of related state-law claims. The district court[2] found that Harris had failed to exhaust the administrative remedies available under the DOT regulations in 49 C.F.R. § 391.47 or, in the alternative, that primary jurisdiction rested with the DOT. Accordingly, the court dismissed all of Harris's claims without prejudice for lack of subject matter jurisdiction.[3] This appeal followed.

---

[2]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

[3]The district court declined to exercise supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(c)(3), which permits abstention where a court "has dismissed all claims over which it has original jurisdiction."

## II.   DISCUSSION

When a dismissal for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), is based on the complaint alone or on undisputed facts in the record, our "review is 'limited to determining whether the district court's application of the law is correct and, if the decision is based on undisputed facts, whether those facts are indeed undisputed.'" Osborn v. United States, 918 F.2d 724, 730 (8th Cir. 1990) (quoting Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981)).  But where, as here, "the court relied . . . on its own determination of disputed factual issues, the appellate court must then review those findings under the 'clearly erroneous' standard."  Id.  Because the district court in this case had to consider affidavits and physicians' findings[4] in order to determine whether or not Harris had exhausted his administrative remedies, we review its findings for clear error.

Congress has delegated to the Secretary of Transportation the authority to prescribe driver qualifications.  See 49 U.S.C. § 31102(b)(1).  Pursuant to this authority, the DOT promulgated the Federal Motor Carrier Safety Regulations, under which a person "shall not drive a commercial motor vehicle" without a "medical examiner's certificate that [the person] is physically qualified."  49 C.F.R. § 391.41(a).  Specifically, "the medical examiner is required to certify that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial motor vehicle safely."  49 C.F.R. § 391.43(f).  And, most importantly in this case, DOT regulations provide appeal procedures[5] for

_____

[4]We have established that a district court "has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1)."  Osborn, 918 F.2d at 728 n.4 (citing Land v. Dollar, 330 U.S. 731, 735 & n.4 (1947)).  This does not, as Harris asserts, convert the 12(b)(1) motion to one for summary judgment.

[5]The driver can seek a formal opinion from the Director of the Office of Bus and Truck Standards and Operations and, within sixty days of the Director's

instances of "disagreement between the physician for the driver and the physician for the motor carrier concerning the driver's qualifications." 49 C.F.R. § 391.47(b)(2).

At the outset, we reject Harris's argument that, because the medical disagreement in this case is between MTC's physician and PAM's physician, the DOT procedures do not apply. Harris adopted the MTC physician's finding that he was physically qualified when he presented it to PAM as proof of his eligibility for employment. He also submitted evidence of, and thereby adopted, his own physician's opinion that he was qualified to drive a truck. We agree with the district court that Harris "cannot now disavow [those] findings." Thus, the issue is whether Harris's failure to seek relief under the DOT procedures requires dismissal of his ADA claim.

There is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51 (1938). Until a plaintiff has pursued available administrative relief, "suit is premature and must be dismissed." Reiter v. Cooper, 507 U.S. 258, 269 (1993). "'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone." United States v. W. Pac. R.R. Co., 352 U.S. 59, 63 (1956). Federal courts addressing claims similar to Harris's have held that "[e]xhaustion of DOT procedures should be required" in these circumstances because driver fitness "falls squarely within the regulatory scheme (and substantive expertise) of DOT." Campbell v. Federal Express Corp., 918 F. Supp. 912, 918 (D. Md. 1996). See also Prado v. Continental Air Transp. Co., 982 F. Supp. 1304, 1308 (N.D. Ill. 1997) ("The court will not abrogate clear congressional intent which vests driver fitness issues in the Secretary of Transportation."). We agree. The DOT is charged

---

determination, appeal the decision to the Assistant Administrator. 49 C.F.R. §§ 391.47(b)(2), 386.13(a).

with and is much better equipped to handle resolution of disputes over a driver's medical qualifications and can do so far more expertly and efficiently than a reviewing court. Thus, we hold that failure to exhaust the remedies available under 49 C.F.R. § 391.47 requires dismissal of this action, precluding Harris from obtaining review of his ADA claim in this court.

Dismissal is particularly appropriate because Harris cannot prove an essential element of a prima facie ADA claim: namely, that he was qualified to perform the job function of a commercial truck driver. Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir. 1996) (plaintiff must show disability within the meaning of the ADA, qualification to perform essential job functions, and adverse employment action). As we have already observed, Congress has given the DOT the sole discretion to set driver qualifications, and DOT regulations clearly require a valid medical examiner's certificate of physical qualification. 49 C.F.R. § 391.41(a). Harris argues that the certificate he obtained from Dr. Hussey at his initial physical conclusively satisfies the requirement and establishes his qualification for purposes of his ADA claim. But he overlooks the central fact in this case: PAM's physicians and medical review staff disagreed with Dr. Hussey's conclusions and disputed the validity of the certificate he issued. According to 49 C.F.R. § 391.47(b)(2), that disagreement brings the question of Harris's physical qualification within the sole province of the DOT. By reviewing Harris's medical records and attempting to enforce its own interpretation of DOT medical standards, PAM was "not insisting upon a job qualification merely of its own devising," Albertson's, Inc. v. Kirkingburg, 527 U.S. 555, 570 (1999), rather it was applying the Federal Motor Carrier Safety Regulations to which it was bound under 49 C.F.R. § 391.11: "a motor carrier shall not . . . permit a person to drive a commercial motor vehicle unless that person is qualified to drive" under the physical qualification standards.

The Supreme Court described the relationship between DOT standards for physical qualification and the elements of an ADA claim:

-6-

When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law. The Senate Labor and Human Resources Committee Report on the ADA stated that 'a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability' under [the ADA].

Albertson's, 527 U.S. at 573 (quoting S. Rep. No. 101-116, at 27-28 (1998)) (first alteration in original). Thus, we cannot reach Harris's ADA claim until the question of his physical qualification is resolved pursuant to the DOT procedures in 49 C.F.R. § 391.47(b)(2).

## III.   CONCLUSION

We affirm the district court.


A true copy.

    Attest:


       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.