# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-20610
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

June 20, 2016

Lyle W. Cayce
Clerk

JIMMIE WILLIAMS,

      Plaintiff - Appellant

v.

J.B. HUNT TRANSPORT, INCORPORATED,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before WIENER, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Jimmie Williams appeals the district court's dismissal of his claim that defendant J.B. Hunt Transport, Incorporated fired him from his job as a tractor-trailer driver due to his disability and in violation of the Americans with Disabilities Act (ADA). We affirm.

I.

When J.B. Hunt hired Williams in June 1999, Williams affirmed that he had read and understood J.B. Hunt's company policies, which require that drivers meet "all Federal and State requirements for certification and [commercial driver] licensing . . . including a current DOT [Department of

No. 15-20610

Transportation] medical physical." These policies reflect federal regulations prohibiting any person from "driv[ing] a commercial motor vehicle unless he/she is qualified."[1]  49 C.F.R. § 391.11.  To be "physically qualified," a driver must meet certain "physical qualification standards" and also "compl[y] with the medical examination requirements in § 391.43."  *See id.* § 391.41(a)(3)(i). A person is not physically qualified if, among other things, he has a current clinical diagnosis of any "cardiovascular disease of a variety known to be accompanied by syncope" (fainting), or any "condition which is likely to cause loss of consciousness or any loss of ability to control a commercial motor vehicle."  *Id.* § 391.41(b)(4), (b)(8).   The medical examiner who provides the driver's certification must attest "that the driver does not have any physical, mental, or organic condition that might affect the driver's ability to operate a commercial vehicle safely."  *Id.* § 391.43.  The DOT regulations also outline a process for resolution of conflicting medical evaluations.  *See id.* § 391.47.

On May 19, 2010, Williams fainted at his home and was diagnosed with syncope.  Williams went on medical leave the next day.  The physician who made this diagnosis, Dr. Chuong Nguyen, recommended a diagnostic workup and advised that Williams could return to work on June 1, 2010.  Dr. Nguyen later extended Williams's return-to-work date to July 15.  He also diagnosed Williams with ventricular tachycardia (a rapid and irregular heartbeat).  On July 15, 2010, Williams saw a different physician, Dr. C.H. Howard with Concentra Medical Centers in Houston, who certified Williams as meeting the DOT standards outlined in 49 C.F.R. § 391.41.   The notes from that examination reflect that Williams told the doctor that he passed out "due to a

---

[1] Congress delegated to the Secretary of Transportation the authority to prescribe driver qualifications.  *See* 49 U.S.C. § 31102(b)(1).

2

cough," and do not mention Williams's prior diagnoses of syncope and ventricular tachycardia.

On July 16, 2010, J.B. Hunt received a report from Dr. Nguyen noting the syncope and ventricular tachycardia diagnoses. J.B. Hunt forwarded that report to Concentra—believing that information therein differed from the medical history reflected in Dr. Howard's certification—and because Dr. Howard was not available, a third physician, Dr. Ellison Wittels, reviewed the report. Dr. Wittels then wrote a letter to J.B. Hunt stating: "I have reviewed the Medical Condition Report you faxed to me . . . . At this time [Williams's] DOT Certification is rescinded until further clarification is received in regard to his medical problem." Less than a week later, Dr. Nguyen sent to J.B. Hunt notes and test results from the diagnostic workup, along with a letter opining that Williams could return to work immediately. J.B. Hunt forwarded these documents to Dr. Wittels. On July 29, 2010, Dr. Wittels saw Williams in his office and told him that his DOT certification was being rescinded.

Before Williams learned about the rescission of his certification, J.B. Hunt had informed him that it needed additional medical information in order for Williams to continue on approved leave. After the meeting between Williams and Dr. Wittels, J.B. Hunt sent Williams letters requesting more information and warning that his failure to provide it, or his inability to return to work by certain dates, could lead to his termination. Williams points to no evidence that he ever submitted additional medical documentation to J.B. Hunt or Concentra.[2] Nor did he ever file an application for the DOT to resolve

---

[2] Williams alleged in his complaint that he "provided [J.B. Hunt] with additional medical documentation plainly demonstrating that all test results that he received were normal and that the original diagnosis of 'syncope, ventricular tachycardia' was eliminated as a cause of [his] fainting." But of course, a party opposing summary judgment must present evidence and cannot "rest on his allegations." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

No. 15-20610

any conflict between medical evaluations pursuant to 49 C.F.R. § 391.47.  At some point after his medical leave expired and no earlier than September 8, 2010, J.B. Hunt administratively terminated Williams.  J.B. Hunt maintains that it did so because Williams had not been medically certified to return to work.

After filing a disability discrimination charge with the Equal Employment Opportunity Commission and receiving a right-to-sue letter, Williams filed this lawsuit, alleging that he was terminated in violation of the ADA.[3]  J.B. Hunt filed a motion to dismiss for lack of subject-matter jurisdiction based on failure to exhaust administrative remedies, or in the alternative, for summary judgment.  The district court granted the motion on subject-matter jurisdiction grounds.  *See generally Williams v. J.B. Hunt Transp., Inc.*, --- F. Supp. 3d ---, 2015 WL 5567416, (S.D. Tex. 2015).  Williams appealed.

II.

The district court dismissed Williams's ADA claim for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), reasoning that a plaintiff in Williams's situation must, before filing suit, exhaust his administrative remedies by initiating 49 C.F.R. § 391.47's process for resolution of conflicting medical evaluations.  *Williams*, 2015 WL 5567416, at *12.  Although no statute requires such exhaustion and § 391.47 does not itself refer to the ADA or discrimination claims, courts have found it prudent to impose an exhaustion requirement because of the DOT's greater competence in determining when its safety regulations are met.  *See, e.g.*, *Harris v. P.A.M.*

---

[3] Williams also brought a claim under the Age Discrimination in Employment Act, but he abandoned that claim in the district court and does not mention it on appeal.

No. 15-20610

*Transp., Inc.*, 339 F.3d 635, 637–39 (8th Cir. 2003); *Campbell v. Fed. Express Corp.*, 918 F. Supp. 912, 916–21 (D. Md. 1996).

This court has not yet had occasion to determine whether to impose this exhaustion requirement. But any such requirement would not be jurisdictional. The Supreme Court recently emphasized "that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 435 (2011). And not all administrative exhaustion requirements are jurisdictional. Indeed, "in the absence of a statutory requirement of exhaustion of administrative remedies, the jurisprudential doctrine of exhaustion controls." *Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 475 (5th Cir. 1997). That doctrine "is not jurisdictional in nature." *Id.* Accordingly, we have corrected district courts that have treated as jurisdictional administrative exhaustion requirements not mandated by any statute's text. *See Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 867 n.11 (5th Cir. 2013); *Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 686 n.5 (5th Cir. 2006). No statute requires that an ADA plaintiff exhaust the § 391.47 process before filing a lawsuit, *Campbell*, 918 F. Supp. at 918, let alone does so in jurisdictional terms, *see Henderson*, 562 U.S. at 438. Thus, the district court should not have dismissed this ADA claim for lack of subject-matter jurisdiction.

## III.

J.B. Hunt moved in the alternative for summary judgment, arguing that Williams could not establish a prima facie case of discrimination on the basis of disability. We may affirm on any ground raised below and supported by the record, even if the district court did not reach it. *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014); *see Premiere*, 440 F.3d at 692, 686 n.5 (affirming dismissal, but noting that Rule 12(b)(1) was the wrong vehicle for dismissing

5

the action).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A "dispute about a material fact is 'genuine'" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  But if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," a court should enter summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Title I of the ADA prohibits employment discrimination "on the basis of disability."  42 U.S.C. § 12112(a).  Where—as here—the plaintiff relies on circumstantial evidence to prove an ADA violation, we apply the *McDonnell-Douglas* burden-shifting framework. *Cannon v. Jacobs Field Servs. N.A., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016).  Under this framework, the plaintiff must first make out a prima facie case of discrimination by showing: "(1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Id.*  If he does so, the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.*  Then the burden shifts back to the plaintiff "to produce evidence from which a jury could conclude that the employer's articulated reason is pretextual." *Id.*

Of course, Congress did not intend the ADA to do away with federal safety regulations.  As the Supreme Court has explained:

> When Congress enacted the ADA, it recognized that federal safety rules would limit application of the ADA as a matter of law.  The Senate Labor and Human Resources Committee Report on the ADA stated that "a person with a disability applying for or currently holding a job subject to [DOT standards for drivers] must be able to satisfy these physical qualification standards in order to be considered a qualified individual with a disability under title I

6

of this legislation." The two primary House committees shared this understanding.

*Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 573 (1999) (alteration in original) (citations omitted). Thus, "courts have consistently held that an employment action based upon an employee's or prospective employee's inability to satisfy DOT medical standards does not violate disability discrimination laws." *Talbot v. Md. Transit Admin.*, No. WMN-12-1507, 2012 WL 5839945, at *2 (D. Md. Nov. 15, 2012). Otherwise, motor-carrier employers would face the dilemma of risking ADA liability or violating the DOT's command that "a motor carrier shall not . . . permit a person to drive a commercial motor vehicle unless that person is qualified" under the agency's safety regulations. *See* 49 C.F.R. § 391.11. Applying this logic and recognizing the DOT's greater expertise in applying its medical-certification regulations, three sister circuits have rejected commercial drivers' ADA claims when, as here, a doctor found the plaintiff medically unqualified and the plaintiff did not obtain a contrary opinion through the DOT's administrative process.

In one such case, a trainee driver named Harris was examined by a Dr. Hussey, who issued him a certificate of qualification. *Harris*, 339 F.3d at 636–37. But details in Dr. Hussey's examination report concerned the employer's medical review office, who sent that report and additional medical records to a second doctor. That doctor reviewed Harris's records and concluded that Harris was not medically qualified; as a result, the employer declined to hire him. *Id.* at 637. The Eighth Circuit affirmed dismissal of Harris's ADA claim because, among other reasons, he could not "prove an essential element of a prima facie ADA claim: namely, that he was qualified to perform the job function of a commercial truck driver." *Id.* at 638–39. The court noted that "DOT regulations clearly require a valid medical examiner's certificate of physical qualification." *Id.* at 639. And it rejected Harris's

argument that Dr. Hussey's initial certification satisfied that requirement, concluding that once a second doctor disputed that certification, Harris could not establish a prima facie ADA case unless he went through 49 C.F.R. § 391.47's dispute resolution process. *Id.*

The Seventh Circuit reached a similar conclusion when an ADA plaintiff lacked DOT medical certification at the time he sought reinstatement as a commercial driver. *See Bay v. Cassens Transp. Co.*, 212 F.3d 969, 973–76 (7th Cir. 2000). That court explained that "[u]nder applicable DOT regulations, Cassens was not allowed to permit Bay to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, and nothing in the ADA purports to change that obligation." *Id.* at 974 (citations omitted). Citing the availability of § 391.47, the court further reasoned:

> [I]t is only when a dispute [between physicians] is resolved in favor of the employee that an employer is obligated to return the employee to work. Until that point, Cassens was entitled to rely on Bay's failure to obtain certification in refusing to allow him to resume his employment as a commercial truck driver, and Cassen may assert Bay's lack of certification as a valid defense to Bay's ADA claim.

*Id.* at 975 & n.2. The Seventh Circuit therefore concluded that Bay could not establish the "otherwise qualified" element of his ADA claim and affirmed the district court's summary judgment against him. *Id.* at 975–76.[4]

---

[4] The Seventh Circuit noted that it might be proper for a court to "look behind" a plaintiff's lack of certification in some circumstances—for example, if the doctor's disqualification was based on a condition not covered by DOT regulations, or if there was evidence of bad faith or collusion between the employer and the medical professional. *Bay*, 212 F.3d at 975. But here, as in *Bay*, "[a] mere ongoing medical relationship between a company and a health organization does not demonstrate a conflict of interest, nor is there any evidence in the record that [Dr. Wittels's] evaluation was biased." *Id.* at 975 n.4. Williams claims in his brief that J.B. Hunt "had one of its administrative assistants tamper with [his] DOT certification," and suggests that this is evidence of animus or bad faith. But the evidence Williams cites for this allegation merely shows that an administrative assistant contacted Concentra to "inform [Dr. Howard] that the company had received a Medical Condition Report that he should see, since the diagnosis in the report differed from the

Finally, in an unpublished opinion, the Sixth Circuit reached the same conclusion when two physicians disagreed over whether an ADA plaintiff was qualified under DOT regulations and the plaintiff did not seek resolution under § 391.47. *See King v. Mrs. Grissom's Salads, Inc.*, No. 98-5258, 1999 WL 552512, at \*1–3 (6th Cir. 1999). That appellate court affirmed summary judgment in favor of the employer, holding that the plaintiff was "not a qualified individual under the ADA" because he lacked the requisite certification and failed to exhaust the § 391.47 procedure. *Id.* at \*2–3.

Williams cites no contrary authority, and persuaded by the reasoning of our sister circuits, we conclude that Williams failed to establish that he was qualified for the job in question—an essential element of his ADA claim. It is undisputed that a physician rescinded Williams's DOT certification months before J.B. Hunt terminated Williams, and that Williams never sought review under § 391.47. Because he lacked the DOT certification required by federal law, J.B. Hunt could not let him return to driving, and the company's administrative termination of Williams did not violate the ADA.

Williams's counterarguments are unavailing. He contends that § 391.47 does not apply because there is no "disagreement between the physician for the driver and the physician for the motor carrier," 49 C.F.R. § 391.47(b)(2); rather, he asserts, the disagreement is between two Concentra doctors retained by J.B. Hunt. The Eighth Circuit rejected a similar argument in *Harris*,[5] and we

---

information reflected in" Dr. Howard's report, and that the assistant then sent that report to Concentra, whereupon a second doctor reviewed Williams's medical records. That is not evidence of bad faith or collusion.

[5] *See Harris*, 339 F.3d at 638 ("[W]e reject Harris's argument that, because the medical disagreement in this case is between MTC's [a truck-driving school's] physician and PAM's [the employer's] physician, the DOT procedures do not apply. Harris adopted the MTC physician's finding that he was physically qualified when he presented it to PAM as proof of his eligibility for employment. He also submitted evidence of, and thereby adopted, his own physician's opinion that he was qualified to drive a truck.").

conclude that, because Williams relies on the certification initially issued by Dr. Howard and the supportive opinion given by Dr. Nguyen, there is clearly a "disagreement between [a] physician for the driver and [a] physician for the motor carrier." Williams also argues that § 391.47 does not apply because Dr. Wittels did not physically examine him. But neither did the doctor who refused certification in *Harris*; there, as here, the physician concluded that the plaintiff was not qualified based on a review of medical records. *Harris*, 339 F.3d at 637.[6] Williams cites no contrary authority suggesting that § 391.47 does not apply in his situation, and none of his arguments overcomes the fact that Williams's DOT certification was "rescinded" months before J.B. Hunt took any adverse employment action against him. At the time he was terminated, Williams was not certified under DOT medical standards; therefore, he was not qualified for his job under the ADA and summary judgment is appropriate.[7]

## IV.

For the reasons stated, we AFFIRM the district court's dismissal of this action.

---

[6] *See also Cliburn v. CUSA KBC, LLC*, No. SA-07-CV-0620 NN, 2007 WL 4199605, at *3 (W.D. Tex. Nov. 25, 2007) (dismissing ADA claims where the plaintiff obtained a DOT medical certification from one physician, but a second physician disagreed based on a review of records, and the plaintiff did not pursue review under § 391.47).

[7] Williams also contends that "[e]ven if 49 C.F.R. § 391.47 were applicable. . . it was [J.B. Hunt] who should have filed an appeal with the DOT." But he cites no authority supporting this argument, which conflicts with the three circuit cases cited above. And another court has sensibly reasoned that "the party that bears the burden of proof on the issue of whether the driver is qualified is the party that carries the burden of seeking a determination from the DOT regarding medical qualification." *Estate of Szleszinski v. Labor & Indus. Review Comm'n*, 736 N.W.2d 111, 123 (Wisc. 2007) (citing *Bay*, 212 F.3d at 973–74). Here, that party is Williams.