IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

ZAPATA V. KELLY'S CARPET

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JOHN ZAPATA, AN INDIVIDUAL, APPELLANT,

V.

KELLY'S CARPET LTD., APPELLEE.

Filed November 14, 2017.    No. A-16-1172.

Appeal from the District Court for Dawson County: JAMES E. DOYLE IV, Judge. Affirmed.

John Zapata, pro se.

Benjamin M. Belmont and Wm. Oliver Jenkins, of Brodkey, Peebles, Belmont, & Line, L.L.P., for appellee.

MOORE, Chief Judge, and INBODY and BISHOP, Judges.

BISHOP, Judge.

John Zapata filed an action against Kelly's Carpet Ltd. (Kelly's Carpet) claiming a breach of contract. Zapata appeals from the Dawson County District Court's order dismissing Zapata's lawsuit based on his lack of standing to bring the action. We affirm.

### BACKGROUND

Zapata, pro se, filed his action against Kelly's Carpet in the district court on February 16, 2016. His complaint alleged he was the general contractor for Ponderosa Drive Housing Unit (Ponderosa) in Lexington, Nebraska, which is owned by Central Nebraska Housing Corporation (Central). Zapata claimed he and Kelly's Carpet entered into a contract on December 8, 2015, for floor covering for 22 units at Ponderosa for a total cost of $21,612.71. Zapata alleged Kelly's Carpet breached the contract, thereby causing various damages. Kelly's Carpet filed an answer denying the complaint, and affirmatively alleging, among other things, that Zapata was not a real

- 1 -

party in interest and therefore the court lacked subject matter jurisdiction. On June 7, 2016, Kelly's Carpet filed a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) (2008), or alternatively, a motion to compel discovery.

A hearing took place on June 16, 2016, on several motions, including the motion to dismiss filed by Kelly's Carpet and a motion to compel discovery filed by Zapata. As relevant here, the court asked Zapata if he attached a copy of the alleged contract to his pleading. Zapata stated "[t]here was never a signed contract." Zapata explained Kelly's Carpet submitted a proposal to him and they did the work "until they found that they made a mistake on the bid," and "pulled off the job." The court asked about Katie Cederburg, who Zapata said was his daughter and that she works for Midwest Environmental Services (MWE), "which has nothing to do with the job." Zapata stated Ponderosa was an apartment complex that he "recently built in the South Haven Addition." Zapata said he "owned the first ten apartments there for 35 years, and [he] added on 22 more apartments."

In examining the documents attached to Zapata's complaint, the court told Zapata if he was representing himself, that was fine, but the court was not seeing any evidence Zapata was the contracting party. The court informed Zapata, "[I]f you're representing yourself, you can bring a lawsuit; but if you're representing other people, you can't bring a lawsuit because you can't practice law on behalf of other people."

Zapata claimed to be representing himself. Zapata acknowledged that he, his wife, and his daughter (Cederburg) owned Central. Exhibit 1, received at the June 16, 2016, hearing, was titled "Subcontract," and was an agreement between Central and Zapata (as a "sole proprietorship") dated July 16, 2015. It indicated Zapata was to install carpets, paint interior and exterior walls, and install trim (labor only) for a project identified as "Southaven Addition - Ponderosa Drive Housing Units." Exhibit 1, along with exhibits 2 through 4, were offered and received in support of Zapata's motion to compel discovery. Kelly's Carpet joined in the offer of exhibits 1 through 4. Kelly's Carpet claimed Zapata was not a real party in interest, and that "any real party in interest here must be [Central], Ponderosa, or MWE." Kelly's Carpet further pointed out that Zapata admitted there was no signed contract.

On June 27, 2016, the district court entered an order addressing various motions, and as pertinent here, granted the motion to dismiss filed by Kelly's Carpet, finding Zapata had no right, title, or interest in the subject matter of the alleged contract. The court gave Zapata 20 days to file an amended complaint, and upon a motion seeking additional time filed by Zapata, the court extended Zapata's deadline to file an amended complaint to August 15.

Zapata, still pro se, filed an amended complaint on August 5, 2016. It alleged Zapata entered into a subcontract with Central to install flooring, and to paint all interior and exterior walls and install trim (labor only), for a project known as Ponderosa. Zapata claimed his representative, John Cameron, asked Kelly's Carpet to submit a proposal to install floor covering for 22 units at Ponderosa. A proposal was allegedly received by Zapata from Kelly's Carpet on October 21, 2015, and Zapata claimed he "telephonically" accepted the proposal for 22 units of floor covering for $21,612.71 on or about December 8. Zapata stated Kelly's Carpet confirmed this agreement with Cederburg (Zapata's daughter) through an email which stated, "We are all set up here." In the middle of January 2016, Kelly's Carpet delivered to Ponderosa the floor covering and materials

for only 11 units rather than 22 units. Zapata claimed that after Kelly's Carpet started the work at the apartment complex, it claimed to have bid on only 11 units, and submitted a revised proposal to Zapata for $40,310.19 to do all 22 units. Zapata refused the revised proposal, and claimed Kelly's Carpet left their work "uncompleted," and Zapata had to contract with another flooring contractor to finish the project at "a high price" and was required to pay Central for damages it incurred. Zapata requested damages for breach of contract, and for loss of rental income incurred by Central "for the units without floor covering which were to be completed by [the] Grand Opening date of February 12, 2016."

Zapata attached to his amended complaint the Kelly's Carpet proposal dated October 21, 2015. That document shows carpeting and materials "SOLD TO" and "SHIPPED TO" Ponderosa with a balance due of $21,612.71. Also attached is a December 8 email from Janine Phipps (with a Kelly's Carpet email address) to Cederburg which states, "We are all set up here." Below the email from Phipps is a response on that same date from Cederburg which simply states, "Thanks." Zapata also attached to his amended complaint the alleged revised proposal received from Kelly's Carpet for floor covering for 22 apartments in the amount of $40,310.19.

On August 15, 2016, Kelly's Carpet filed a "Motion to Dismiss or [sic] Plaintiff's First Amended Complaint, Motion to Compel and Motion for Protective Order." As relevant here, Kelly's Carpet again claimed Zapata was not a real party in interest and had no standing to bring the action. On August 30, Zapata filed a response in opposition to the motion filed by Kelly's Carpet, to which he attached an affidavit from himself as well as one from Cederburg.

Another hearing took place on September 1, 2016. A document from the Nebraska Secretary of State's office regarding Central (showing Zapata as president and secretary of the corporation), was received without objection as exhibit 5. The affidavits of Zapata (exhibit 6) and Cederburg (exhibit 7) were offered by Zapata and were received without objection. Kelly's Carpet again argued Central was the real party in interest, not Zapata, since Kelly's Carpet sold to Ponderosa which is owned by Central.

The district court entered an order on November 29, 2016. The court concluded the evidence did not establish Zapata was a real party in interest and sustained "[Kelly's Carpet's] 12(b)(1) motion." The court further pointed out that Zapata had twice attempted to show he was a real party in interest "to no avail." Therefore, the court concluded "beyond a doubt, [Zapata] can plead no set of facts which would provide him with standing to pursue the claim that's been asserted." The court ordered that the "motion to dismiss for lack of jurisdiction under Rule 12(b)(1) is sustained," and dismissed Zapata's amended complaint without leave to amend. The court further overruled and denied any other relief requested which was not specifically granted in the order. Zapata timely appealed from this order.

ASSIGNMENTS OF ERROR

Zapata assigns 9 errors, which we condense and restate as, the district court erred in: (1) failing to provide Zapata adequate notice it was converting a motion to dismiss into a summary judgment motion; (2) dismissing Zapata's amended complaint without an opportunity to further amend; and (3) not allowing discovery.

STANDARD OF REVIEW

The defect of standing is a defect of subject matter jurisdiction. *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013). Aside from factual findings, which are reviewed for clear error, the granting of a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) is subject to de novo review. *Id*.

An appellate court reviews a district court's order granting a motion to dismiss de novo, accepting all allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013).

ANALYSIS

*Motion to Dismiss Not Converted to Motion for Summary Judgment.*

The district court dismissed Zapata's amended complaint pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(1) (Rule 12(b)(1)) (lack of subject matter jurisdiction) because it concluded Zapata was not a real party in interest and therefore lacked standing to bring the action. On appeal, Zapata claims the court converted the motion to dismiss into a motion for summary judgment without giving him an opportunity to present documents. While it is true the court's November 29, 2016, order refers to the September 1 hearing as one being held on Kelly's Carpet's "Motion for Summary Judgment and Motion to Compel" and Zapata's "Opposition," the court ultimately dismissed the action "for lack of jurisdiction under Rule 12(b)(1)." Additionally, the court's reference to Neb. Rev. Stat. § 25-1334 (Reissue 2016) (related to supporting or opposing affidavits received for summary judgment motions) did not convert the motion to dismiss into one for summary judgment. The court cited to this statute when discussing Zapata's and Cederburg's affidavits, specifically noting certain places where legal conclusions were stated rather than declarations of fact. The court's mere reference to this statute did not convert the motion to dismiss into a motion for summary judgment.

Although Kelly's Carpet appears to acquiesce to the notion there was a conversion from a motion to dismiss to a motion for summary judgment, it asserts that any failure by the district court to give formal notice of such a change was harmless. Kelly's Carpet states, "If, on a motion asserting a defense contained in Neb. Ct. R. Pldg. § 6-1112, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by statute." Brief for appellee at 17. Kelly's Carpet cites to *Nebraska Coalition for Ed. Equity v. Heineman*, 273 Neb. 531, 731 N.W.2d 164 (2007) for this proposition.

However, that legal proposition pertains specifically to § 6-1112(b)(6), which applies to a motion to dismiss based upon a failure to state a claim upon which relief can be granted. Section 6-1112(b) (Rule 12(b)) states:

> If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in §§ 25-1330 to 25-1336, and all parties shall be

given reasonable opportunity to present all material made pertinent to such a motion by statute.

Notably, the conversion language set forth above does not refer to a motion to dismiss for any of the other grounds set forth in the Rule 12(b), nor has it been so applied to other grounds in existing case law. For example, the Nebraska Supreme Court has specifically held that when a Rule 12(b) motion to dismiss is based on a lack of personal jurisdiction, affidavits may be submitted without converting the motion into one for summary judgment. See *RFD-TV, LLC v. Wildopenwest Fin., LLC*, 288 Neb. 318, 849 N.W.2d 107 (2014) (motion to dismiss for lack of personal jurisdiction under § 6-1112(b)(2) allows affidavits to be submitted without converting the motion into one for summary judgment).

Further, with regard to a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), which was the basis for dismissal here, evidence may likewise be received without converting a motion to dismiss into a motion for summary judgment. In *In re Invol. Dissolution of Wiles Bros., supra*., the Nebraska Supreme Court affirmed the dismissal of an action based upon the plaintiffs' lack of standing, noting that a defect in standing is a defect in subject matter jurisdiction. Therefore, although the defendants in that case filed motions to dismiss based upon Rule 12(b)(6) (failure to state a claim upon which relief can be granted), the district court nevertheless treated the motions as motions to dismiss for lack of subject matter jurisdiction brought under Rule 12(b)(1), for which receipt of evidence pertaining to the motion to dismiss is permitted. See *In re Invol. Dissolution of Wiles Bros.*, *supra*. At the hearing on the motions to dismiss in that case, exhibits were offered and the district court entered an order receiving 5 out of 21 exhibits. The Nebraska Supreme Court affirmed the district court's dismissal of the action pursuant to Rule 12(b)(1). *See, also, Citizens Opposing Indus. Livestock v. Jefferson Cty.*, 274 Neb. 386, 740 N.W.2d 362 (2007) (evidentiary hearing is permitted where Rule 12(b)(1) motion raises factual challenge); *Harris v. P.A.M. Transp., Inc.*, 339 F.3d 635 (8th Cir. 2003) (district court has authority to consider matters outside the pleadings when subject matter jurisdiction is challenged under Rule 12(b)(1); if court relies on its own determination of disputed factual issues, the appellate court must then review those findings under the clearly erroneous standard, and this does not convert the 12(b)(1) motion into one for summary judgment).

Accordingly, the district court did not err in receiving evidence, including Zapata's and Cederburg's affidavits, at the hearing on the motion to dismiss filed by Kelly's Carpet. And the receipt of such evidence to determine whether the court had subject matter jurisdiction over the action did not convert the pending motion to dismiss into a motion for summary judgment. Finding no error in the procedure used by the district court, we next consider the court's determination that Zapata was not a real party in interest and therefore lacked standing to bring the action.

*Dismissal for Lack of Standing and No Opportunity to Further Amend.*

The district court determined "Zapata adduced no evidence, other than his conclusory averments, of communications necessary to establish a contract between Zapata and [Kelly's Carpet]," and therefore Zapata failed to establish he was a real party in interest. Further, since Zapata failed to show he was a real party in interest even after a prior opportunity to amend his

complaint to address this deficiency, the court denied further leave to amend. The court concluded Zapata could not plead any "set of facts which would provide him with standing to pursue the claim" asserted.

To determine whether a party is a real party in interest, the focus of the inquiry is whether that party has standing to sue due to some real interest in the cause of action, or a legal or equitable right, title, or interest in the subject matter of the controversy. *Stevens v. Downing, Alexander*, 269 Neb. 347, 693 N.W.2d 532 (2005). The question of whether a party who commences an action has standing and is therefore the real party in interest is jurisdictional. *Id*.

Under the doctrine of standing, a court may decline to determine the merits of a legal claim because the party advancing it is not properly situated to be entitled to its judicial determination. *In re Invol. Dissolution of Wiles Bros.*, 285 Neb. 920, 830 N.W.2d 474 (2013). The focus is on the party, not the claim itself. *Id*. A defect in standing is a defect of subject matter jurisdiction. *Id*.

To have standing, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties. *Applied Underwriters v. S.E.B. Servs. of New York*, 297 Neb. 246, 898 N.W.2d 366 (2017). A party invoking a court's or tribunal's jurisdiction bears the burden of establishing the elements of standing. *Id*. At the pleading stage, the standard for determining the sufficiency of a complaint to allege standing is fairly liberal. *Id*.

Even construing Zapata's amended complaint liberally, along with the evidence adduced at the hearing on the motion to dismiss, Zapata has failed to demonstrate that any claim against Kelly's Carpet derives from an agreement made with Zapata personally. Rather, Kelly's Carpet sold and shipped to Ponderosa, which Zapata acknowledged is owned by Central. Zapata admitted "[t]here was never a signed contract," but nevertheless claimed he entered into a contract with Kelly's Carpet based upon his receipt of the October 21, 2015, proposal, and his alleged acceptance of that proposal. The Kelly's Carpet proposal reflects pricing for material and labor "SOLD TO" and "SHIPPED TO" "Ponderosa Drive Housing Units." Ponderosa is owned by Central, not Zapata individually. Zapata's name does not appear anywhere on the proposal. Zapata also attached to his amended complaint an email from Kelly's Carpet sent to Cederburg on December 8 which states, "We are all set up here." Below that is a response from Cederburg that same day simply saying, "Thanks." Again, Zapata's name does not appear anywhere in that document. Zapata also provided a "Subcontract" between Central and himself related to a "Project" entitled "Southaven Addition - Ponderosa Drive Housing Units." However, this document serves only to show an agreement between Zapata and Central for Zapata to "[i]nstall all carpets," "[p]aint all interior and exterior walls," and "[i]nstall trim - labor only." Nothing in this document demonstrates Zapata entered into a contract with Kelly's Carpet.

While Zapata may have an interest in the transaction involving Kelly's Carpet, it stems from his ownership interest in Central. As an example, Zapata's amended complaint seeks relief for "loss of income of rent for the units without floor covering," since they were not completed by Central's "Grand Opening" date of February 12, 2016. Any claim Central may have for loss of rent cannot be recovered by Zapata filing a pro se action brought in his own name which actually seeks relief on behalf of Central's interests. A layperson cannot represent a corporation or other distinct business entity existing legally separate from its owner. *Zapata v. McHugh*, 296 Neb. 216, 893 N.W. 720 (2017). The rule that such entities may litigate only through a duly licensed attorney

is venerable and widespread. *Id*. This rule prohibits even presidents, major stockholders, and sole owners from appearing pro se in relation to causes of action involving the entity's status as a business. *Id*. Persons not licensed to practice law in Nebraska are prohibited from prosecuting an action or filing papers in the courts of this state on behalf of another. *Id*. Under Neb. Rev. Stat. § 7-101 (Reissue 2012), no such person shall practice law in any action or proceeding to which he is not a party. *Zapata v. McHugh, supra*. Distinct business entities must appear by counsel or not at all. *Id*. And the rule that a layperson cannot appear in court in a representative capacity cannot be circumvented by subterfuge. See *id*. Further, the character in which one is a party to a suit, and the capacity in which a party sues, is determined from the allegations of the pleadings and not from the caption alone. *Id*.

To the extent any contractual agreement existed between Kelly's Carpet and Central (as the owner of Ponderosa), any alleged breach of such an agreement must be brought by those entities. Despite a prior opportunity to amend his complaint, Zapata remained unable to establish the existence of any contract between Kelly's Carpet and himself personally. To have standing, a litigant must assert the litigant's own rights and interests, and cannot rest a claim on the legal rights or interests of third parties. *Applied Underwriters v. S.E.B. Servs. of New York, supra*. And since a defect in standing is a defect of subject matter jurisdiction, see *In re Invol. Dissolution of Wiles Bros., supra.*, we find no error in the district court's order dismissing Zapata's amended complaint without leave to amend.

Further, because we affirm the dismissal of Zapata's amended complaint due to the lack of subject matter jurisdiction, it is unnecessary to address Zapata's argument related to discovery. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert*, 259 Neb. 160, 608 N.W.2d 588 (2000).

## CONCLUSION

For the reasons stated above, the district court's order dismissing Zapata's amended complaint without leave to amend is affirmed.

AFFIRMED.